IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KENDA M. HANKEY,           :
                           :
        Plaintiff          :    CIVIL NO. 4:11-CV-00913
                           :
    vs.                    :
                           :
MICHAEL J. ASTRUE,         :
COMMISSIONER OF SOCIAL     :    (Judge Rambo)
SECURITY,                  :
                           :
        Defendant          :

## MEMORANDUM

## Background

The captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Kenda M. Hankey's claim for social security disability insurance benefits and supplemental security income benefits.

Hankey protectively filed[1] her applications for disability insurance benefits and supplemental security income benefits on February 19, 2008.  Tr. 12 and 81-

─────────────────

1.  Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits.  A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

82.[2]  The applications were initially denied by the
Bureau of Disability Determination on August 29, 2008.[3]
Tr. 83-92.  On October 1, 2008, Hankey requested a
hearing before an administrative law judge. Tr. 12 and
97-98.  After one year had elapsed a hearing was held
before an administrative law judge on October 2, 2009.
Tr. 12 and 20-62.  On October 15, 2009, the
administrative law judge issued a decision denying
Hankey's applications. Tr. 12-19.  On October 22, 2009,
Hankey filed a request for review with the Appeals
Council.  Tr. 7.  Hankey filed a letter brief in support
of that request for review on June 9, 2010, and on March
11, 2011, the Appeals Council concluded that there was
no basis upon which to grant Hankey's request. Tr. 1-5
and 175-184.  Thus, the administrative law judge's

_____

2.  References to "Tr.__" are to pages of the
administrative record filed by the Defendant as part of
her Answer on July 18, 2011.

3.  The Bureau of Disability Determination is an agency
of the state which initially evaluates applications for
disability insurance and supplemental security income
benefits on behalf of the Social Security
Administration.  Tr. 84 and 89.

decision stood as the final decision of the
Commissioner.

Hankey then filed a complaint in this court on
May 12, 2011.  Supporting and opposing briefs were
submitted and the appeal[4] became ripe for disposition on
April 23, 2012, when Hankey elected not to file a reply
brief.

Disability insurance benefits are paid to an
individual if that individual is disabled and "insured,"
that is, the individual has worked long enough and paid
social security taxes.  The last date that a claimant
meets the requirements of being insured is commonly
referred to as the "date last insured."  It is
undisputed that Hankey meets the insured status
requirements of the Social Security Act through March
31, 2012. Tr. 12, 14, 121 and 139.

Supplemental security income is a federal income
supplement program funded by general tax revenues (not

---

4.  Under the Local Rules of Court "[a] civil action
brought to review a decision of the Social Security
Administration denying a claim for social security
disability benefits" is "adjudicated as an appeal."
M.D.Pa. Local Rule 83.40.1.

social security taxes).  It is designed to help aged, blind or other disabled individuals who have little or no income.  Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits.

Hankey, who was born in the United States on September 9, 1978,[5] graduated from high school in 1997 and can read, write, speak and understand the English language and perform basic mathematical functions. Tr. 26, 81, 111, 131, 137 and 145.  During her elementary and secondary schooling Hankey attended regular education classes. Tr. 137.  After high school Hankey completed training in 1998 at Empire Beauty School. Tr. 21 and 138.

---

5.  At the time of the administrative hearing and the administrative law judge's decision Hankey was 31 years of age. Tr. 33.  The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49."  20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1).  Hankey is considered a "younger individual" whose age would not seriously impact her ability to adjust to other work. 20 C.F.R. § 404.1563(c).

Hankey has past relevant work experience[6] as a cashier, stock person, food service worker, hairdresser, housekeeper, clerical sorter, and telemarketer. Tr. 57. This work was described by a vocational expert as ranging from unskilled, sedentary to skilled, light work.[7] Id.

---

6. Past relevant employment in the present case means work performed by Hankey during the 15 years prior to the date her claim for disability was adjudicated by the Commissioner.  20 C.F.R. §§ 404.1560 and 404.1565.

7. The terms sedentary, light, medium and heavy work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

> (b) *Light work*.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg

(continued...)

Records of the Social Security Administration reveal that Hankey had earnings in the years 1994 through 2007 as follows:

| | |
|---|---|
| 1994 | $   725,87 |
| 1995 | 3578,50 |
| 1996 | 731.51 |
| 1997 | 5154.26 |
| 1998 | 3315.77 |
| 1999 | 7805.47 |
| 2000 | 6712.74 |
| 2001 | 10153.84 |

---

7.   (...continued)
controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

(c) *Medium work*.  Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can do sedentary and light work.

(d) *Heavy work*.  Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

20 C.F.R. §§ 404.1567 and 416.967.

6

```
2002                8285.18
2003               13846.31
2004               10819.43
2005                6115.71
2006                7188.01
2007                4459.05
```

Tr. 122.  Hankey's total reported earnings from 1994

through 2007 were $88,891.66.  Id.

Hankey claims that she became disabled on July

1, 2007, because of fibromyalgia,[8] migraine headaches,

───────────────────

8.  Fibromyalgia is described by the American College of
Rheumatology in pertinent part as follows:

Fibromyalgia is an often misunderstood – even
unrecognized – disorder that causes widespread
muscle pain and tenderness which tends to come
and go, and move about the body.  This common
and chronic condition also can be associated
with fatigue and sleep disturbances.

Fast facts

● Fibromyalgia affects 2-4% of the
population, predominantly women.

● Fibromyalgia is diagnosed based on
patient symptoms and physical examination.
There is no laboratory, radiographic, or
other diagnostic test, but these can be
used to exclude other conditions.

*     *     *     *     *     *     *     *     *     *

What is fibromyalgia?

(continued...)

8.   (...continued)
        Fibromyalgia is defined by chronic widespread
        muscular pain and symptoms such as fatigue,
        sleep disturbance, stiffness, cognitive and
        memory problems, and symptoms of depression and
        anxiety.  More localized pain conditions often
        occur in patients with fibromyalgia,
        including migraine or tension headaches,
        temporomandibular disorder, irritable bowel
        syndrome, gastroesophageal reflux disorder,
        irritable bladder, and pelvic pain syndrome.
        The symptoms of fibromyalgia and associated
        conditions can vary in intensity and wax and
        wane over time. Stress often worsens these
        symptoms.

        *    *    *    *    *    *    *    *    *    *    *

American College of Rheumatology, Practice Management,
Fibromyalgia, http://www.rheumatology.org/practice/
clinical/patients/diseases_and_conditions/fibromyalgia.
asp (Last accessed August 13, 2012). Also, "it is often
the rheumatologist who makes the diagnosis (and rules
out other rheumatic diseases), but [the] primary care
physician can provide all the care and treatment for
fibromyalgia . . . ." Id.

        The Mayo Clinic website sets forth the criteria
for diagnosing fibromyalgia as follows:

        Tests and diagnosis

        In 1990, the American College of Rheumatology
        (ACR) established two criteria for the
        diagnosis of fibromyalgia:

            ▪ Widespread pain lasting at least 3 months

            ▪ At least 11 positive tender points—out of
                                    (continued...)

8

left shoulder problems, depression and anxiety. Tr. 83,
88 and 132.  Hankey in a document filed with the Social
Security Administration stated as follows: "I always
have pain in my back. I can only stand for a limited
amount of time.  If I stand for too long, my legs either
give out or they start to cause me pain. I get restless
if I sit for too long. I get migraines at least 3 time a
week.  I have very bad anxiety.  My left shoulder gives
me some trouble, so I can only use my left arm for so

---

8.  (...continued)
            a total possible of 18

        But fibromyalgia symptoms can come and go.  And
        many doctors were uncertain about how much
        pressure to apply during a tender point exam.
        While the 1990 guidelines may still be used by
        researchers studying fibromyalgia, less
        stringent guidelines have been developed for
        doctors to use in general practice.
        These newer diagnostic criteria include:

            ■ Widespread pain lasting at least three
            months

            ■  No other underlying condition that might
            be causing the pain

Fibromyalgia, Tests and diagnosis, Mayo Clinic staff,
http://www.mayoclinic.com/health/fibromyalgia/DS00079/D
SECTION=tests-and-diagnosis (Last accessed August 13
17, 2012).

long before it starts to bother me."[9]   Tr. 132.   Hankey has not worked since June 30, 2007.   <u>Id.</u>

For the reasons set forth below we will affirm the decision of the Commissioner denying Hankey's applications for disability insurance and supplemental security income benefits.

**STANDARD OF REVIEW**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner.   <u>See</u> <u>Poulos v. Commissioner of Social Security</u>, 474 F.3d 88, 91 (3d Cir. 2007); <u>Schaudeck v. Commissioner of Social Sec. Admin.</u>, 181 F.3d 429, 431 (3d Cir. 1999); <u>Krysztoforski v. Chater</u>, 55 F.3d 857, 858 (3d Cir. 1995).   However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence."   <u>Id.</u>; <u>Brown v. Bowen</u>, 845 F.2d 1211, 1213 (3d Cir. 1988); <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993).   Factual findings which are supported by substantial evidence

---

9.   The record reveals that Hankey is right-handed. Tr. 147.

must be upheld. 42 U.S.C. §405(g); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); <u>Keefe v. Shalala</u>, 71 F.3d 1060, 1062 (2d Cir. 1995); <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001); <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988)(quoting <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938)); <u>Johnson v. Commissioner of Social Security</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d

Cir. 1999).  Substantial evidence has been described as
more than a mere scintilla of evidence but less than a
preponderance.  Brown, 845 F.2d at 1213.  In an
adequately developed factual record substantial evidence
may be "something less than the weight of the evidence,
and the possibility of drawing two inconsistent
conclusions from the evidence does not prevent an
administrative agency's finding from being supported by
substantial evidence." Consolo v. Federal Maritime
Commission, 383 U.S. 607, 620 (1966).

        Substantial evidence exists only "in
relationship to all the other evidence in the record,"
Cotter, 642 F.2d at 706, and "must take into account
whatever in the record fairly detracts from its weight."
Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488
(1971).  A single piece of evidence is not substantial
evidence if the Commissioner ignores countervailing
evidence or fails to resolve a conflict created by the
evidence.  Mason, 994 F.2d at 1064.  The Commissioner
must indicate which evidence was accepted, which

evidence was rejected, and the reasons for rejecting certain evidence. <u>Johnson</u>, 529 F.3d at 203; <u>Cotter</u>, 642 F.2d at 706-707.  Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole.  <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981); <u>Dobrowolsky v. Califano</u>, 606 F.2d 403, 407 (3d Cir. 1979).

**SEQUENTIAL EVALUATION PROCESS**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy, regardless of whether such
work exists in the immediate area in which
he lives, or whether a specific job vacancy
exists for him, or whether he would be hired if
he applied for work.  For purposes of the
preceding sentence (with respect to any
individual), "work which exists in the national
economy" means work which exists in significant
numbers either in the region where such
individual lives or in several regions of the
country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in
evaluating disability insurance and supplemental
security income claims.  See 20 C.F.R. §404.1520 and 20
C.F.R. § 416.920; Poulos, 474 F.3d at 91-92.  This
process requires the Commissioner to consider, in
sequence, whether a claimant (1) is engaging in
substantial gainful activity,[10] (2) has an impairment
that is severe or a combination of impairments that is

_____

10.  If the claimant is engaging in substantial gainful
activity, the claimant is not disabled and the
sequential evaluation proceeds no further. Substantial
gainful activity is work that "involves doing
significant and productive physical or mental duties"
and "is done (or intended) for pay or profit."  20
C.F.R. § 404.1510 and 20 C.F.R. § 416.910.

14

severe,[11] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[12] (4) has the residual functional

---

11.   The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§ 404.1520(c) and 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id.  If a claimant has any severe impairments, the evaluation process continues.  20 C.F.R. §§ 404.1520(d)-(g) and 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process.  20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923 and 416.945(a)(2). An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl, and handle. 20 C.F.R. § 404.1545(b).  An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 1545(c).

12.  If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets

(continued...)

capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id.  As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[13]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996).  A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule.  The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual

_____

12.  (...continued)
or equals a listed impairment, the sequential evaluation process proceeds to the next step.

13.  If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

16

functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

## **DISCUSSION**

The administrative law judge at step one of the sequential evaluation process found that Hankey had not engaged in substantial gainful work activity since July 1, 2007, the alleged disability onset date. Tr. 14.

At step two of the sequential evaluation process, the administrative law judge found that Hankey had the following severe impairments: "fibromyalgia and migraines." Tr. 15-16. The administrative law judge further found as follows:

> The claimant's medically determinable mental impairments of depression, anxiety, and a history of cannabis abuse, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe.

Tr. 15.  In finding that Hankey's mental impairments were non-severe, the administrative law judge relied on the opinion of Joseph J. Kowalski, a state agency

psychologist, who reviewed Hankey's medical records and determined that she suffered from depression, anxiety and a substance addiction disorder but that Hankey's mental impairments were non-severe and did not meet the criteria of any Listed impairment. Tr. 259-271.  Dr. Kowalski was of the opinion that Hankey had no functional limitations with respect to activities of daily living; she had mild functional limitations with respect to maintaining social functioning and concentration, persistence or pace; and she had no repeated episodes of decompensation each of an extended duration.[14] Tr. 269.

At step three of the sequential evaluation process the administrative law judge found that Hankey's impairments did not individually or in combination meet or equal a listed impairment. Tr. 16.  A review of the administrative law judge's decision reveals that in so

---

14.  In order to meet the criteria of any listed mental impairment, an applicant must have at least two marked limitations or one marked limitation and repeated episodes of decompensation each of an extended duration. Tr. 269.

finding the administrative law judge considered the listings and Dr. Kowalski's opinion, and she explicitly stated that Hankey's impairments did not "satisfy the requisite laboratory, clinical and/or diagnostic requirements for listing severity." Tr. 16.

At step four of the sequential evaluation process the administrative law judge found that Hankey had the residual functional capacity to perform a limited range of unskilled, light work as defined in the regulations. Tr. 16.  Specifically, the administrative law judge found that Hankey could perform light work that involved occasionally climbing ramps and stairs but never climbing ladders, ropes or scaffolds; occasionally stooping, crouching and crawling; and no exposure to cold and hazards such as machinery and heights. Id.

Hankey's treating physician were Gunar Kosek, D.O., and Miroslawa Nowak, M.D.  Neither Dr. Kosek nor Dr. Nowak indicated that Hankey had functional limitations which would prevent her from engaging in the limited range of light work as set by the administrative

law judge and we are unable to discern from their bare
medical treatment notes any work-preclusive limitations.
Tr. 207-212, 245-250 251-254, 291-294 and 313-358.

In concluding that Hankey had the ability to
engage in a limited range of light work the
administrative law judge relied on the opinion of Dr.
Kowalski; Scott Prince, D.O., a state agency medical
consultant who examined Hankey on or about July 28,
2008; and Gerald A. Gryczko, M.D., a state agency
physician who reviewed Hankey's medical records and
completed a statement of Hankey's physical functional
abilities on August 27, 2008. Tr. 15 and 18.

Dr. Prince after examining Hankey determined
that Hankey had the ability to engage in medium work.
Tr. 275-276.  Dr. Prince found that Hankey was 5'7" tall
and weighed 141 pounds and her blood pressure was normal
at 112/62; Hankey had full range of motion in her
shoulders, elbows, wrists, knees, hips, cervical spine,
lumbar spine and ankles. Tr. 277-278. Dr. Prince noted
that Hankey had normal strength in her upper and lower

extremities; Hankey had a normal gait; Hankey was able

to walk on her heels and toes; and Hankey was able to

squat with some loss of balance, however, she had no

difficulty getting up from such a position. Id.

Dr. Gryczko found that Hankey had the ability

to engage in a limited range of medium work. Tr. 279-

285.

The administrative law judge gave Hankey the

benefit of the doubt and reduced Hankey's residual

functional capacity to a limited range of light work.

Tr. 18.

The administrative law judge based on a

residual functional capacity of a limited range of light

work as described above and the testimony of a

vocational expert found that Hankey had the ability to

perform her past relevant work as a housekeeper,

clerical sorter, hairdresser, telemarketer, cashier and

food service worker. Tr. 18.  Because Hankey could

perform her prior relevant work, the administrative law

judge found that Hankey was not disabled and, thus, the

administrative law judge did not proceed to step five of the sequential evaluation process. Id.

The administrative record in this case is 360 pages in length and we have thoroughly reviewed that record.  The administrative law judge did an excellent job of reviewing Hankey's vocational history and medical records in her decision. Tr. 12-19.  Furthermore, the brief submitted by the Commissioner sufficiently reviews the medical and vocational evidence in this case. Doc. 27, Brief of Defendant.

Hankey argues that the administrative law judge erred by (1) failing to find at step three of the sequential evaluation process that her impairments singly and in combination met or equaled the criteria of a listed impairment,[15] (2) failing to give controlling

--------

15. Counsel who represented Hankey during the administrative hearing and also represents Hankey in the present appeal made the following statement at the administrative hearing: "Kendra has two significant problems, neither of which, perhaps, may meet an impairment listing. . . I would submit that the migraines certainly are debilitating, but, in combination with the fibromyalgia, prevent her, even
                                                   (continued...)

weight to treating physicians' opinions, (3) failing to properly consider Hankey's complaints of pain, (4) failing to reflect all of Hankey's impairments in the residual functional capacity assessment and the hypothetical questions posed to the vocational expert, and (5) failing to find that Hankey was disabled because she did not have the ability to perform a full range of sedentary work as a result of all of her impairments, both exertional and non-exertional, severe and not severe.  Based on our review of the record, we find no merit in Hankey's arguments.

Hankey's first argument is premised on the contention that she met the requirements of certain physical and mental health listings.  The purpose of the Listings of Impairments is to describe impairments "severe enough to prevent a person from doing any gainful activity," regardless of age, education or work experience.  20 C.F.R. § 404.1525(a); see also Sullivan

15.  (...continued)
though they may not meet listing, as I said, from engaging in any type of work." Tr. 25.

v. Zebley, 493 U.S. 521, 532 (1990).  The Listings
operate as a presumption of disability without further
inquiry as to whether the claimant can actually perform
prior relevant work or other work available in the
local, regional or national economies.  Id.  To qualify
for benefits by showing that an impairment, or
combination of impairments, is equivalent to a listed
impairment, Hankey had the burden of presenting "medical
findings equivalent in severity to all the criteria for
the one most similar impairment."  Sullivan v. Zebley,
493 U.S. at 531; Bowen v. Yuckert, 482 U.S. 137, 146 n.5
(1987)(stating that it is the claimant's burden to
present medical findings that show that his impairment
matches or is equal in severity to a listed impairment).

     Hankey has not explained how she meets the
criteria of any listing.  Her argument is completely
conclusory.  Hankey in her brief reference some medical
evidence and the fact that she suffered from some severe
impairments but she does not described the criteria of
any listed impairment or how she meets the criteria of

any such listed impairment.   With respect to listed

mental impairments, the administrative law judge

appropriately relied on the opinion of Dr. Kowalski in

finding that Hankey did not meet the criteria of any

listed mental impairment.

Hankey argues that the administrative law

judge discounted medical opinion evidence.   However,

there was no medical opinion evidence in the record from

treating or examining physicians stating that Hankey's

impairment either met or equaled the criteria of a

listed impairment.[16]

---

16. Hankey appears to contend that she meets Listing
14.06, Undifferentiated and mixed connective tissue
disease. Section 14.00D5 of the Listings describes this
condition as follows: "a. *General*. This listing
includes syndromes with clinical immunologic features
of several autoimmune disorders, but which does not
satisfy the criteria of any of the specific disorders
described. For example, you may have clinical features
of SLE and systemic vasculitis, and the serologic
(blood test) findings of rheumatoid arthritis.   b.
*Documentation of undifferentiated and mixed connective
tissue disease.* Undifferentiated connective tissue
disease is diagnosed when clinical features and
serologic (blood test) findings, such as rheumatoid
factor or antinuclear antibody (consistent with an
autoimmune disease disorder) are present but do not

(continued...)

The Social Security regulations require that an applicant for disability insurance come forward with medical evidence "showing that [the applicant] has an impairment(s) and how severe it is during the time [the applicant] say[s] [he or she is] disabled" and "showing how [the] impairment(s) affects [the applicant's] functioning during the time [the applicant] say[s] [he or she is] disabled."  20 C.F.R. § 404.1512(c).  Hankey failed to provide such evidence.

The record contains a functional assessment from a state agency psychologist, Dr. Kowalski who reviewed Hankey's medical records and the physical functional assessments from Dr. Prince and Dr. Gryczko. The administrative law judge's reliance on those assessments was appropriate. See <u>Chandler v.</u>

---

16.  (...continued)
satisfy the criteria for a specific disease. Mixed connective tissue disease (MCTD) is diagnosed when clinical features and serologic findings of two or more autoimmune disease overlap."  Hankey's contention fails and is totally devoid of merit because Dr. Nowak, who is a rheumatologist, did not diagnose Hankey with an autoimmune disease (including MCTD) but fibromyalgia. Tr. 314.

Commissioner of Soc. Sec., 667 F.3d. 356, 362 (3d Cir.
2011) ("Having found that the [state agency physician's]
report was properly considered by the ALJ, we readily
conclude that the ALJ's decision was supported by
substantial evidence[.]"). The administrative law judge
appropriately evaluated Hankey's severe and non-severe
impairments and took into account Hankey's functional
limitations in the residual functional capacity
assessment.

In setting the residual functional capacity,
the administrative law judge considered Hankey's
credibility and determined that Hankey's statements
concerning the intensity, persistence and limiting
effects of her symptoms were not credible to the extent
that they were inconsistent with the ability to perform
a limited range of light work as described above. Tr.
17.  The administrative law judge was not required to
accept Hankey's subjective claims regarding her physical
or mental limitations. See Van Horn v. Schweiker, 717
F.2d 871, 873 (3d Cir. 1983)(providing that credibility

27

determinations as to a claimant's testimony regarding the claimant's limitations are for the administrative law judge to make).  It is well-established that "an [administrative law judge's] findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the administrative law judge] is charged with the duty of observing a witness's demeanor . . . ."  Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991)("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess the witness credibility.").  Because the administrative law judge observed Hankey when she testified at the hearing on October 2, 2009, the administrative law judge is the one best suited to assess the credibility of Hankey.

As for Hankey's contention that the administrative law judge did not consider her impairments in combination, it is clear from a review of

the administrative law judge's thorough opinion that she
considered both Hankey's severe and non-severe
impairment in combination when setting Hankey's residual
functional capacity.  No treating or examining physician
indicated that Hankey's impairments singly or in
combination met or equaled the criteria of a listed
impairment or that her conditions would impact her
mental or physical work-related functional abilities.
Notably, no treating or examining physician stated that
Hankey had functional limitations for the requisite
continuous 12 month period[17] that would prevent her from
engaging in the limited range of light work set by the
administrative law judge.

      Our review of the administrative record reveals
that the decision of the Commissioner is supported by

_____

17. As stated earlier in this memorandum to receive
disability benefits, the plaintiff must demonstrate an
"inability to engage in any substantial gainful
activity by reason of any medically determinable
physical or mental impairment which can be expected to
result in death or which has lasted or can be expected
to last for a continuous period of not less than 12
months."  42 U.S.C. § 432(d)(1)(A).

substantial evidence.  We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the decision of the Commissioner.

An appropriate order will be entered.

s/Sylvia H. Rambo
United States District Judge

Dated:  August 29, 2012.